## MILNER v. SCHAEFER et al.
### No. 11814.

Court of Civil Appeals of Texas.
San Antonio.
April 28, 1948.

Rehearing Denied May 26, 1948.

John C. Hoyo and L. M. Bickett, both of San Antonio, for appellant.

Loughridge & Edwards and W. Pat Camp, all of San Antonio, for appellees.

NORVELL, Justice.

About the year 1931, Aubrey Milner, Sam H. Schaefer and Waldo M. Lewis entered into a co-partnership for the purpose of buying and selling real estate under the name of "The Milner Company."

The partners acquired property in the States of Texas, Colorado, Ohio and Kansas and became possessed of lands, mortgage notes and contracts of considerable value.

In 1942 Milner became dissatisfied with the partnership arrangement, withdrew from the firm and filed a suit for an accounting and distribution of the partnership assets in the District Court in and for the City and County of Denver, Second Judicial District of the State of Colorado.

After numerous attempts to dispose of this litigation, and while the case was in the process of trial, the parties and their attorneys prepared a written instrument which was designated as "Memorandum, Re Contemplated Milner-Schaefer-Lewis Settlement." For convenience, we refer to this instrument as the settlement memorandum. Under the heading "Assets other than Cash," it was provided that "(1) All Texas property, including all interests in Lady of the Lake and Milner-Lewis holdings, go to Schaefer and Lewis." Under the heading "Cash on Hand and Hereafter Received," the memorandum provided that "All cash in the Texas Receivership goes to Schaefer and Lewis." Under the heading "Receivership Expenses" it was provided that, "(1) Expenses incurred by the Texas and Kansas receivers now unpaid or hereafter incurred are to be paid by Schaefer and Lewis."

This settlement memorandum was quite extensive and purported to settle generally the affairs of the partnership. By its terms, Milner was to receive substantial portions of the partnership properties, principally those located in the State of Colorado, while Schaefer and Lewis received the properties located in the State of Texas.

The settlement memorandum also provided that:

"K. All deeds, abstracts of title and records pertaining to any of the properties herein involved and in the possession or subject to the control or direction of any of the three parties hereto, are to be promptly delivered to the party, or parties, receiving the property in question, pursuant to the terms of this agreement.

"L. Upon the request of any of the three parties to this agreement, said agreement shall be incorporated in appropriate court decree, or decrees.

"M. The parties shall join in all requests, petitions and stipulations necessary to enable the prompt closing of the existing receiverships upon the carrying out of this agreement."

On the 21st day of January, 1944, Milner, Schaefer and Lewis executed a short agreement whereby they adopted the settlement memorandum as a final contract of settlement. This adopting agreement reads as follows:

"The undersigned hereby agree to enter into a contract in settlement of all controversies among themselves, embodying the terms as set forth in the Memorandum re Contemplated Milner-Schaefer-Lewis Settlement, dated January 21, 1944, attached hereto and by such reference incorporated herein.

"The undersigned further agree that such Agreement shall, at the request of any party, be incorporated in an appropriate decree by any of the courts wherein the said properties and business of the parties are now in receivership.

"In witness whereof, the parties hereto have hereunto subscribed their names at Denver, Colorado, this 21st day of January, 1944."

The agreement was signed by A. Milner, W. M. Lewis and Sam H. Schaefer.

The parties reported to the court that they had settled the pending lawsuit and at their request the following decree was rendered:

"The within stipulation and agreement of all the parties hereto being now presented to the Court for approval, it is ordered by the Court that the terms of same being mutually agreeable to all the parties thereto who are also all the litigants named and involved in the case hereby affected by this agreement, are ordered approved and directed to be carried out as set forth as a complete and final settlement of said causes of action in issue in said case. Further, the present case is ordered continued to February 21, 1944, for further disposition and orders of the Court, the Court retaining jurisdiction of the same.

"(Sgd.) Charles C. Sackmann, Judge"

Thereafter the Colorado court attempted to enforce its decree by orders in personam directed against Milner, but these came to naught· as Milner left the jurisdiction of the Colorado court and came to Texas.

The Texas receivership proceedings mentioned in the memorandum of agreement above mentioned were instituted in the District Court of Bexar County, Texas, by Schaefer in 1942. This appeal is from a judgment rendered in said cause. The parties to the judgment are the original plaintiff, Schaefer, Annie E. Lewis, Independent Executrix of the Estate of Waldo M. Lewis, who died pending this protracted litigation, and Aubrey Milner, plaintiff in the Colorado suit and a defendant in the Texas suit.

The effect of the decree of the Texas court herein appealed from was to enforce the agreement contained in the Colorado judgment, whereby Milner had agreed that the Texas property should go to Schaefer and Lewis.

Trial below was to the court without a jury. No findings of fact or conclusions of law were requested.

Appellant here presents four points which are predicated upon the trial court's action in overruling appellant's exceptions to appellees' pleadings.

The contentions presented by appellant's exceptions and carried forward by his points in this Court are stated in the brief as follows:

"(1) That the purported judgment of January 21, 1944, by the District Court of Colorado, as shown by its face, was not in any respect a final judgment but a mere interlocutory order wherein the court continued the case 'for further disposition and orders of the court, the court retained jurisdiction of the same.'

"(2) That the alleged agreement of January 21, 1944, showed upon its face that it was a mere preliminary or tentative agreement to enter into a contract of settlement thereafter to be executed, and that there was no allegation that any final and complete contract, as contemplated by the preliminary or tentative agreement, was ever entered into between the parties.

"(3) That the alleged agreement of January 21, 1944, and the purported judgment of the same date were so vague, indefinite, and uncertain as to render their provisions unenforceable, because they do not describe with legal certainty any property located in the State of Texas.

"(4) That the Colorado court was wholly without jurisdiction to render a judgment adjudicating title to land in Texas and divesting title thereto out of Aubrey Milner."

The judgment of the Colorado court rendered on January 21, 1944, is composed of three parts, which must be construed together, that is, the settlement memorandum, the adopting agreement and the order of the judge approving and confirming the same as a decree of his court. It appears that the Colorado court considered

the order of January 21, 1944, as a final judgment and referred to it as such in a subsequent order seeking to enforce the decree.

■ However, the law of Colorado was not pleaded, and the provisions of Rule 184a, Texas Rules of Civil Procedure, were not invoked, consequently we presume that the law of that State is the same as that of Texas. The parties agree that a judgment must be "final" in order that it be entitled to full faith and credit under Article 4, Section 1, of the Constitution of the United States.

■ The judgment here involved is obviously an agreed judgment, and, further, it is one in the nature of a partition decree. The Texas authorities relating to this type of judgment support a holding that the judgment is final and thus entitled to full faith and credit. We are in accord with the following statement contained in appellees' brief:

"The Colorado suit was a simple partition suit brought by appellant against appellees for the purpose of dividing certain real and personal property belonging to a partnership composed of appellant and appellees and situated in the State of Texas, Colorado, Kansas and elsewhere. The ultimate relief sought the dividing of the property among the three parties. The agreed judgment of January 21, 1944, including the stipulation of the parties attached thereto and made a part of the judgment itself disposes of all of the parties, and since it divides the specific property among the three parties to the suit, it disposes of all of the issues involved in the suit, * * *. Since the judgment specifically provides that each party is to receive certain property therein described, there remained nothing to be done but to carry out the judgment by the execution of the instruments which appellant and appellees thereby agreed to sign and deliver. The merits of the case had been finally disposed of. The judgment does not provide for any future action for revision of the judgment or otherwise, affecting the merits, but all of the rights of the parties having been settled by the judgment, the only further proceedings required were those necessary to carry the judgment into full effect."

■ In Ware v. Jones, Tex.Com.App., 250 S.W. 663, 665, the Court said:

"A 'final judgment' is one which awards the judicial consequences which the law attaches to the facts and determines the controversies between the parties over the subject-matter. It terminates the litigation of the parties on the merits of the case so that nothing remains to be done but to execute it according to its terms. * * *

"However, if the rights controverted by the parties be settled by the judgment, it will be held final, although further proceedings should be required to carry the judgment into full effect. Such proceedings may be expressly provided for in the face of the judgment without affecting its finality, provided they are merely incidental to its proper execution."

In the recent case of Hargrove v. Insurance Investment Corporation, 142 Tex. 111, 176 S.W.2d 744, 746, the Supreme Court, quoting from Freeman on Judgments, 5th Ed., Vol. 1, pp. 54-56, § 33, said:

"A decree is none the less final because some future orders of the court may become necessary to carry it into effect. * * * A judgment or decree which determines all the equities or the substantial merits of the case is final for purposes of appeal though further proceedings may be necessary in the execution of it or some incidental or dependent matter may still remain to be settled."

With regard to partition suits the Court said:

"In the partition cases, the reason, or one of the reasons, given for permitting an appeal from the decree specifying the shares or interests of the parties and appointing commissioners to make the actual division, is that by such decree the merits of the case are determined and the rights of the parties concluded, with nothing remaining to be done but the enforcement of the decree by the division of the property in conformity with rules therein settled."

We overrule appellant's first point. Merie v. Andrews, 4 Tex. 200; Cannon v. Hemp-

hill, 7 Tex. 184; McFarland v. Hall's Heirs, 17 Tex. 676; Linn v. Aramboull, 55 Tex. 611; Malone v. Johnson, 45 Tex.Civ.App. 604, 101 S.W. 503; Beene v. National Liquor Co., Tex.Civ.App., 189 S.W. 86.

■ Under his second point appellant emphasizes the wording contained in the adopting agreement duly signed by Milner, Schaefer and Lewis, whereby they "agree to enter into a contract in settlement of all controversies, etc." It is asserted that "it is clear from a casual reading of the memorandum that it was a hastily drawn, sketchy memorandum."

It is true that the agreement of January 21, 1944, is short, but it does incorporate by reference the settlement memorandum which is a document of some five pages in length. Further, the agreement was actually presented to the Colorado District Court and incorporated in an appropriate decree. We believe it reasonably clear that the parties intended to make a final settlement of their controversies and by so representing their intentions to the court, secured a judicial decree approving the settlement. We overrule appellant's second point.

■ In support of his third point, in which appellant contends that the description of the property involved in the agreement and judgment of January 21, 1944, is so vague and indefinite and uncertain as to be unenforceable, appellant states that:

"Paragraph No. (1) of the (settlement) Memorandum * * * reads as follows:

"'All Texas property, including all interests in Lady of the Lake and Milner-Lewis holdings, go to Schaefer and Lewis.'

"The Court will observe that the language is not 'all Texas property of Milner'; the reference is merely to 'all Texas property.' Appellant earnestly insists that such language is wholly insufficient to constitute a legal description of any property located in the State of Texas."

Appellees state that:

"The judgment was entered in a suit filed by appellant for the primary purpose of partitioning property that belonged jointly to him and to each of the appellees; the agreed judgment was entered on the docket of the court in that case and the recitation of 'All Texas property' could not by any strained rule of construction be interpreted to mean anything but all Texas property involved in that lawsuit and owned by the parties thereto. Any contention to the contrary would seem beyond the realms of credulity."

We agree with appellees. Prior to January 21, 1944, receivership proceedings had been instituted in Texas and the receiver had filed an inventory of the Texas property. We think it clearly appears that the Colorado court decree had for its purpose the settlement of litigation involving a partnership composed of Milner, Schaefer and Lewis, and that the parties intended to contract with reference to the Texas property *owned by the partnership* and involved in litigation.

In Hervey v. Edens, 69 Tex. 420, 6 S.W. 306, 309, the Supreme Court held, in construing a deed involving the conveyance of partnership property:

"It is still further objected to the deed of assignment that it does not sufficiently describe the property claimed by plaintiff to have been conveyed by it. To this it must be replied that it conveys in general terms all the property then owned by the firm of Duncan, Sherman & Co. and all the property of each member of that partnership, wherever situated; that this can be made certain by proof of what property they, and each of them, owned, and that therefore the description is good."

In Coppard v. Glasscock, 46 S.W.2d 298, 300, the Commission of Appeals considered numerous cases dealing with the sufficiency of real property descriptions, and in its opinion (holding approved by the Supreme Court) said:

"It is the general rule of the law that any description which specifies a property intended to be conveyed, and the instrument furnishes the means of determining the particular property covered by the instrument, or which could be ascertained by inquiry as to what property is owned by the grantor in the instrument,

is legally sufficient. This is true for the reason that the sole purpose of a description of property, as contained in a deed of conveyance, is to identify the subject matter of the grant. 8 R.C.L. p. 1074, § 129. This general rule, which has been adopted for determining the sufficiency of the description of property, which is contained in a deed, is that if there appears therein enough to enable one, by pursuing an inquiry based upon the information contained in the deed, to identify the particular property to the exclusion of others, it will be sufficient. In other words, any description which will enable any one to identify the property, when aided by inquiry based upon information given by the instrument. is sufficient. 11 C.J. p. 456, par. 78, note 36. In Wilson v. Boyce, 92 U.S. 320, 325, 23 L.Ed. 608, the description in a deed was held to be sufficient which purported to convey 'all my lands wherever situated,' and in the same case the description in a mortgage was held to be sufficient which described the property as 'all my property.' In Garner v. Boyle, 97 Tex. 460, 79 S.W. 1066, 1067, the Court of Civil Appeals, 34 Tex.Civ.App. 42, 77 S.W. 987, wherein a writ of error by the Supreme Court was denied, held the description to be sufficient in a conveyance which purported to convey 'all these certain lots * * * located and situated in any county in the state of Texas, belonging to the separate estate of Annie M. Paschal.' In Witt v. Harlan, 66 Tex. 660, 2 S.W. 41, the Supreme Court held the description to be sufficient in an instrument, which purported to convey 'my entire interest in lands in Texas.' Measured by these rules of law, we are of the opinion that the description in the instrument is sufficient. That description is as follows: 'All of the property of the said Syndicate of whatever description and wheresoever situated, * * *.' "

■ The entire record of the legal proceedings may be considered in ascertaining the property involved therein and disposed of by the judgment. Moore v. Unknown Heirs of Gilchrist, Tex.Civ. App., 273 S.W. 308; Durden v. Roland, Tex.Civ.App., 269 S.W. 274; Dearing v. City of Port Neches, Tex.Civ.App., 65 S.W.2d 1105.

We overrule appellant's third point.

As to appellant's fourth point, we do not understand that the trial court held that the Colorado court had jurisdiction or authority to adjudicate land titles in Texas. In fact, the Colorado court, by attempting to enforce its decree of January 21, 1944, proceeded strictly in personam in recognition of its lack of jurisdiction or authority to directly adjudicate Texas land titles.

■ However, the Colorado decree did have the effect of judicially determining that Milner had made a valid contract with Schaefer and Lewis under the terms of which Schaefer and Lewis were entitled to receive the Texas property belonging to the partnership. Milner had invoked the jurisdiction of the Colorado court. It had jurisdiction of all the parties and its judgment is binding and operative under the rules of res judicata and estoppel by judgment.

In Hall v. Jones, Tex.Civ.App. 54 S.W. 2d 835, 836, wr. ref., this Court said:

"The fact must be kept steadily in mind that the Oklahoma judgment did not purport either to divest or invest the title to the property. It did not preclude or purport to preclude plaintiff in error from presenting and enforcing any other evidence of title to this property. It simply adjudicated the deed in question to be insufficient to pass title to the property involved.

"It is elemental that the courts of one state have no authority or jurisdiction to determine a naked question of title to real property situated in another state, or to divest or invest the title.

"But it seems to be equally well settled that the courts of one state may exercise jurisdiction, when affirmatively invoked or acquiesced in, to determine the validity or effect of a deed of conveyance of real property situated in another state so as to bind the parties to such decree, which, operating directly upon them per-

sonally, prohibits them from disputing it in another state. * * *

"In Massie v. Watts, supra, [6 Cranch 148, 3 L.Ed. 181], Chief Justice Marshall, after an exhaustive review of the authorities upon this subject, stated the rule to be 'That, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree.' * * *

"The case made here is within the rule announced. Plaintiff in error himself selected the Oklahoma forum for the adjudication of the question of the validity of the deed upon which he afterwards relied in this suit. He presented that instrument to the Oklahoma court as evidence of his title to the land in dispute and of his right to the rents and revenues derived from said land. He affirmatively invoked the judgment of that court upon the sufficiency of that deed to show title to the property, and that court, in the exercise of the jurisdiction thus invoked, held the deed void. Under the authorities cited plaintiff in error is bound by that decree, and is estopped to dispute its effect in any other court. The decision there was res adjudicata of that subject."

We overrule appellant's fourth point. Bailey v. Tully, 242 Wis. 226, 7 N.W.2d 837, 145 A.L.R. 578, and A.L.R. Annotations following pages 583 et seq.

Appellees, by a point designated as a "fifth counterpoint" present the contention that the agreement of January 21, 1944, considered simply as a contract independent of the circumstance that it was incorporated in a judicial order, is sufficient to support the judgment appealed from, inasmuch as no findings of fact and conclusions of law were requested.

Appellant contends that this theory was not pleaded. In this State an agreed judgment is regarded as being in the nature of a contract. Plumly v. Plumly, Tex.Civ.App., 210 S.W.2d 177, and authorities therein cited; 25 Tex.Jur. 387, §§ 25, 26. When an agreed judgment is pleaded a contract is likewise pleaded. We think the Colorado decree involved here is a judgment entitled to full faith and credit under the federal constitution, but if technically it be not a "final judgment," it is our opinion that the pleadings and evidence show that Milner, by valid contract, relinquished all claim to the Texas lands to Schaefer and Lewis, and that the judgment of the trial court may be supported upon this theory.

Being of the opinion that appellant's points disclose no reversible error, an affirmance of the trial court's judgment will be ordered.

Affirmed.