**297-15**

ORIGINAL

COURT OF CRIMINAL
APPEALS
AT AUSTIN TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 04 2015

Abel Acosta, Clerk

PRO, SE

PETITION FOR DISCRETIONARY
REVIEW
WITH A PETITION

FILED IN
COURT OF CRIMINAL APPEALS

MAY 04 2015

Abel Acosta, Clerk

ANDRE O. GIPSON
APPELLANT
US.
THE STATE

APPEAL FROM CAUSE NO.
D1OC - 07 - 302550

331 st JUDICIAL DIST. COURT,
AUSTIN, TRAVIS COUNTY, TEXAS
HON. FRED MOORE, VISITING JUDGE

PARTIES :

ANDRE O. GIPSON
# 1526997
CONNALLY UNIT
899 FM 632
KENEDY TX 78119
APPELLANT

THE STATE OF
TEXAS

( i )

## Identity of Parties

Andre D. Gipson
#1526997
Connally Unit
899 FM 632
Kenedy TX. 78119
    Appellant

THE STATE OF TEXAS

(1)

# ORAL ARGUMENT

ORAL ARGUMENT WAIVED

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| IDENTITY OF PARTIES | 1 |
| ORAL ARGUMENTS | 2 |
| TABLE OF CONTENTS | 3 |
| INDEX OF AUTHORITIES | 4 |
| STATEMENT OF THE CASE | 5 |
| ISSUES PRESENTED | 6-10 |

## INDEX OF AUTHORITIES

| | PAGE |
|---|---|
| ARCHIE V. STATE, 340 S.W.3d 734, 737 N.3 (TEX. Crim. APP. 2011) | 7 |
| CASANOVA V. STATE, 383 SW3d 530, 533 (TEX. Crim. APP. 2012) | 7 |
| CASTILLO V. STATE, 221 S.W.3d 689, 691 (TEX. Crim. APP. 2007) | 8 |
| Golden V. STATE, 851 SW2d 291, 294 (TEX. Crim. APP. 1993) | 9 |
| SAUNDERS V. STATE, 817 S.W.2d 688 (TEX. Crim. APP. 1991) | 7 |
| TRAN V. STATE, 870 S.W.2d 654, 657 (TEX. APP. Houston [1st Dist.] 1994, Pet. refd); DRUERY V. STATE, 225 S.W.3d 491, 498 (TEX. Crim. APP. 2007) | 7 / 6 |
| WINCOTT, 59 S.W.3d At 700-01 | 10 |
| JACKSON V. VIRGINIA 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed 2d 560 (1979) | 10 |

## TEX. STATUTES / CONST. STATUES

| | |
|---|---|
| ART. 38.14 | 8 |
| TEX. Pen. Code 29.02 | 5 |
| TEX. Pen. Code 29.03 | 5 |
| TEX. Pen. Code 12.42 | 5 |
| PRATER | 10 |
| Certificate of Service | 10 |

(4)

## STATEMENT OF THE CASE

APPELLANT Andre Gipson WAS charged by indictment with one count OF AGGRAVATED ROBBERY WITH A DEADLY WEAPON, A first degree FELONY. see. TEX. PENAL Code § 29.02 (a)(2), § 29.03 (a)(2), (b). THE indictment Also contained An enhancement paragraph, alleging one Prior, Final conviction. RR.2 4-6; CR1 2-3. see. Tex. penal Code § 12.42 (c)(1). APPELLANT entered A plea of not guilty. Trial WAS Held before A Jury. APPELLANT WAS Found guilty AS charged in the indictment. (RR. 2 6; RR.39; RR4 39-40; CR1. 24, 33-36, 120

APPELLANT elected to HAVE the Jury Assess punishment. RR2. 5-7; RR 4. 40; CR1. 6.

THE Jury Found the enhancement Allegation to be true AND Assessed A sentence to (28) Years. THE trial court certified APPELLANT's right to APPEAL. CR1.38. APPELLANTS counsel Filed notice OF APPEAL. but it WAS untimely. He WAS granted An out of time APPEAL. see. CR1 70-114, 118-19.

## Issues Number One

THE COURT OF APPEALS ABUSED its discretion for denying the ground that the evidence was legally insufficient to support a conviction. Absent the testimony of accomplice Leonard griffin, the remaining evidence failed to connect Appellant to the commission of the instant offense.

THE charge given to the jury included an instruction that Leonard griffin was an accomplice as a matter of Law. CR.1 21-2; see RR3.108-14, 159-65 Without griffin's testimony, the evidence adduced at trial did not tend to connect Appellant to the commission of the instant offense. By operation of Tex. code crim. Proc. § 38.14, Appellant's conviction must be reversed, and an acquittal must be rendered.

THE accomplice-witness rule found in Tex. code crim. Proc. § 38.14 creates a statutorily imposed review, one not derived from federal or state constitutional principles that define ordinary standards. Druery v. State, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007)

see. Smith v. State, 332 S.W.3d. 425, 442 (Tex. Crim. App. 2011) "When reviewing the sufficiency of non-accomplice evidence under Art. 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense. The sufficiency of non-accomplice evidence is judged according to the particular facts and circumstances of each case. The Direct or circumstantial non-accomplice evidence is

(6)

sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. So when there are conflicting views of the evidence - one that tends to connect the accused to the offense and one that does not - we will defer to the fact finder's resolution of the evidence. Therefore, it is not appropriate for appellate courts to independently construe the non-accomplice evidence.";

Trail v. State, 870 S.W. 2d 654, 657 ( Tex. App-Houston (1st Dist.) 1994, Pet. ref'd) "Flight may be considered in determining whether the evidence raises an issue on whether a witness is an accomplice.;

## Corroboration

Casanova v. State, 383 SW3d 530, 533 (Tex. Crim App. 2012). "In Saunders v. State, 817 S.W. 2d 688 (Tex. Crim. App. 1991). We articulated a standard for determining egregious harm under Almanza in the context of the failure to submit an accomplice-witness instruction. "[I]f the omission is not made known to the trial judge in time to correct his error, appellate review must inquire whether the jurors would have found the corroborating evidence so unconvincing in fact as to render the states overall case for conviction clearly and significantly less persuasive."

Archie v. State, 340 S.W. 3d 734, 737 n. 3 (Tex. Crim. App. 2011). Co-D's girlfriend "testified that [Co-D] told her that 'me and [D] killed somebody.'An accomplice's out-of-court statement may not be used to corroborate

(7)

Him For Purposes of Art. 38.14 still, [CO-D's] out-of-court statement did not itself have to be corroborated under Art. 38.14 And the Jury was entitled to regard it as independent evidence of [D's] guilt, as long as it was corroborated as required by [TRE] 803 (24)

Castillo v. state, 221 s.w. 3d 689, 691 [TEX. crim. App. 2007) "under this rule, the reviewing court eliminates All of the accomplice testimony from consideration And then examines the remaining Portions of the record to see if there is Any evidence that tends to connect the Accused with the commission of the crime.

These cases controls Appellants situation that the trial court Abused its discretion on this ground Look down below on what Happened in trial.

Turning to the case At bar none of the witness did not implicate Appellant At All. (RR3.10-44) Shastri said three men came to his store, one of whom Approached the counter. This man pointed A gun At Shastri's head And asked for money. (RR.3.46.54-5, 63, 65-6). When Asked where the man was sitting, Shastri testified "right by his Attorney's side. I'm not quite positive. It is About So percent." Needless to Say, the state did not Ask the trial court for the record to reflect that the witness Had identified Appellant. (RR.3.58) Victor Ceballos, the crime scene specialist, lifted the latent Finger And Palm prints introduced into evidence. But he did not Personally Analize the prints he recovered, nor did he make Any Comparisons to

(8)

KNOWN PRINTS OF SUSPECTS. (RR3. 66-77); (RR6. SX #14-16) WHEN HE COLLECTED THE LATENT PRINTS, CEBALLOS WAS MINDFUL OF INFORMATION PROVIDED BY ANOTHER OFFICER, "THAT THE UNKNOWN SUSPECTS MAY HAVE TOUCHED THE TELEPHONE ON THE EAST SIDE OF THE STORE," WHICH WAS NEXT TO AN AUSTIN AMERICAN STATESMAN NEWSPAPER MACHINE (RR3. 71-7); (RR6 SX #7-8). CEBALLOS COULD NOT TELL HOW LONG THE PRINTS WERE PRESENT BEFORE HE COLLECTED THEM. HE WAS NOT AWARE OF THE LAST TIME IT HAD RAINED (RR3. 79-85.) AFTER THE FIRST ABORTIVE APPEARANCE OF ACCOMPLICE WITNESS GRIFFIN SEE. (RR3. 108-14) BONNIE MANNO TOOK THE STAND. HER TESTIMONY ESTABLISHED THAT THREE FINGERPRINTS RECOVERED FROM THE SCENE - ONE FOUND ON A PAY PHONE RECEIVER OUTSIDE OF THE STORE, AND TWO FROM THE INTERIOR OF THE STORE'S EXIST DOOR - MATCHED THE KNOWN PRINTS OF GRIFFIN (RR3. 115-39); (RR6 SX #15-16) MANNO'S TESTIMONY DID NOT IMPLICATE APPELLANT. FLATEL'S TESTIMONY DID NOT IMPLICATE APPELLANT (RR3. 169-75)

At best, THE PALM PRINT EVIDENCE ARGUABLY ESTABLISHES APPELLANT'S MERE PRESENCE AT THE SCENE OF THE INSTANT OFFENSE. "IT IS WELL-SETTLED THAT MERE PRESENCE ALONE OF A DEFENDANT AT THE SCENE OF A CRIME IS INSUFFICIENT TO CORROBORATE ACCOMPLICE TESTIMONY. GOLDEN V. STATE, 851 SW2d 291, 294 (TEX. CRIM. APP. 1993)

SEE. (RR3. 166-8) (THE FACT THAT APPELLANT WAS IN HUTCHINSON'S COMPANY ONE MONTH AFTER THE INSTANT OFFENSE MAY LEND SUPPORT TO THE IDEA OF "GUILT BY ASSOCIATION," BUT IT FAILS

(9)

Link appellant to the instant offense. See.
Wilcott, 59 S.W.3d At 700-1)

The identification evidence of Shastri's
words was only "About 50 percent" certain
(ll. 3.58)

◉ One must be reminded of identification evidence.
See. "National Academy of Sciences, strengthening
Forensic science in the United States : A path
Forward 112 (2009) ("AAS report") (discussing
Identification evidence)

The Court of Appeals used the wrong standard
For denying relief this court should send the
the case back to see which analysis was used.
They didn't even cite the JACKSON V. VIRGINIA
STANDARD.   See. case. JACKSON V VIRGINIA,
443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed 2d 560 (1979)


## Prayer

Appellant prays for any relief deem just.


## Certificate of service

On this day of  4-8-2015 appellant did
send his (PDR) with A petition to the court
of Criminal Appeals clerk Abel Acosta. From
the Connally unit by mail 899 Fm 632 Kenedy
Tx. 78119

Submitted

Andre D.
Nipson
4-8-15

(10)

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00808-CR

**Andre Demar Gipson, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. D-1-DC-07-302550, HONORABLE FRED A. MOORE, JUDGE PRESIDING**

---

## MEMORANDUM OPINION

A jury found appellant Andre Gipson guilty of aggravated robbery, a first-degree felony. *See* Tex. Penal Code § 29.03. After finding that Gipson had previously been convicted of another felony, the jury assessed punishment at 28 years' imprisonment, and the trial court rendered judgment on the jury's verdict. *See id.* § 12.42(c)(1). We will affirm the judgment of the trial court.

## BACKGROUND

The jury heard evidence that Kishan Shastry, the complaining witness in this case, was a clerk at the Rutland Food Store in Austin. On the evening of the alleged robbery, three men were seen standing together near a payphone and newsstand outside the store. According to witnesses, two or three of the men then entered the store, where Shastry and another clerk were working. Shastry was standing near the cash register when one of the men, whom Shastry later identified as Gipson, pointed a gun at him and demanded that Shastry give him the money.

Meanwhile, a second man held the other clerk on the ground at gunpoint. As Shastry was attempting to open the cash register, Gipson struck Shastry on the head with his gun. Shastry gave Gipson the money from the register, and the three men left the scene.

Following an investigation by the Austin Police Department, Gipson was indicted for the offense of aggravated robbery with a deadly weapon, enhanced by a previous conviction for a felony offense. During the guilt-innocence phase of the jury trial, the State called multiple witnesses, including Leonard Griffin, who admitted that he had participated in the robbery by holding the second clerk at gunpoint. Gipson called no witnesses and did not testify. The jury convicted Gipson of aggravated robbery. During the punishment phase, Gipson pleaded true to an enhancement allegation. The jury assessed Gipson's punishment, and the trial court rendered judgment on the jury's verdict.

After he initially filed an untimely notice of appeal, the Court of Criminal Appeals granted Gipson leave to file an out-of-time appeal. *Ex parte Gipson*, No. AP-76,918, 2012 WL 5509984, at *1 (Tex. Crim. App. Nov. 14, 2012) (per curiam). In this subsequent appeal, Gipson contends that the trial court erred by: (1) rendering judgment on the jury's verdict although there is legally insufficient evidence to corroborate the testimony of his alleged accomplice Griffin; (2) allowing a witness to testify after a violation of Texas Rule of Evidence 614, commonly known as "the Rule"; and (3) overruling an objection to the State's jury argument.

## DISCUSSION

*The accomplice-witness rule*

At trial, Griffin testified that he, Gipson, and a third man, Donald Hutchinson, participated in the robbery.[1] Griffin explained that he held a store clerk at gunpoint during the robbery and identified State's exhibit 21-B as the gun he used to commit the robbery. Griffin also stated that Gipson held a clerk at gunpoint and struck him on the head with the gun. In his first point of error, Gipson argues that there was insufficient evidence to corroborate Griffin's accomplice testimony. The State responds that the cumulative weight of evidence provided by non-accomplice witnesses tended to connect Gipson with the robbery.

Under article 38.14 of the Texas Code of Criminal Procedure, "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." *See Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007) (accomplice testimony "must be corroborated by independent evidence tending to connect the accused with the crime"). The testimony of an accomplice witness is inherently suspect and should be received and acted on with caution because it is "evidence from a corrupt source." *Walker v. State*, 615 S.W.2d 728, 731 (Tex. Crim. App. 1981); *Korell v. State*, 253 S.W.3d 405, 409 (Tex. App.—Austin 2008, pet. ref'd).

---

[1] Griffin had previously pleaded guilty to aggravated robbery and had agreed to offer true testimony against his codefendants.

3

The accomplice-witness rule creates a statutorily imposed review and is not derived from federal or state constitutional principles that define the usual factual and legal sufficiency standards. *Druery*, 225 S.W.3d at 498. To weigh the sufficiency of the corroborative evidence, we disregard the accomplice's testimony and examine the remaining portions of the record to ascertain whether there is evidence tending to connect the accused with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Maynard v. State*, 166 S.W.3d 403, 410 (Tex. App.—Austin 2005, pet. ref'd). Because the standard is "tendency to connect," rather than a rational-sufficiency standard, the corroborating evidence need not be sufficient by itself to establish guilt beyond a reasonable doubt. *Id.* Nor must the evidence link the defendant directly to the crime. *Matter of C.M.G.*, 905 S.W.2d 56, 58 (Tex. App.—Austin 1995, no writ). If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, then the requirement of article 38.14 has been fulfilled. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). However, evidence that merely proves that the offense was committed does not suffice. *Id.* We review a claim that accomplice-witness testimony is insufficiently corroborated in the light most favorable to the verdict. *See Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994).

Disregarding Griffin's testimony, we conclude that the remaining evidence tends to connect Gipson to the robbery. At trial, Shastry described the robbery to the jury and identified

4

Gipson as an assailant.[2] Detective Charles Kleinert later testified that he had presented a photo line-up to Shastry and that Shastry had selected Gipson's photograph out of that line-up.

In addition, Margarita Fernandez testified that she was walking to the Rutland Food Store on the night of the robbery when she saw three men standing by the payphone and newsstand. According to Fernandez, the men looked suspicious because "they had . . . bandannas around their neck" and "they weren't really on the pay phone," they "were just . . . holding the phone." Fernandez, who was present in the store during the robbery, testified that one of the men held an employee on the ground and pointed a silver gun at him. When the prosecutor asked Fernandez whether State's exhibit 21-B matched the gun that she saw the man use, Fernandez testified that it looked like the same gun. Fernandez also told the jury she saw a second man hold the clerk behind the register at gunpoint, demand money, and strike the clerk on the head with the gun. Although Fernandez could not identify the assailants, print examiners testified that they had identified a palm print lifted from the newsstand as Gipson's and three other prints lifted from the scene as Griffin's.

Finally, Brian Turner, a Travis County sheriff's deputy, testified that about a month after the robbery he had stopped a vehicle after observing a traffic violation. Hutchinson was the

---

[2] In response to the prosecutor's questions, Shastry stated that the person who held the gun to his head was in the courtroom and was wearing a blue shirt. When asked where the assailant was sitting, Shastry replied, "Right by his attorney's side. I'm not quite positive. It is about 50 percent." On appeal, Gipson argues that because Shastry equivocated, the jury could not have relied on this testimony as connecting Gipson to the robbery. However, the jury is the sole judge of the credibility and weight to be attached to a witness's testimony. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). Moreover, we must view this evidence in the light most favorable to the verdict. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997) We therefore consider Shastry's in-court identification as one piece of evidence among others that tend to connect Gipson to the robbery.

driver, and Gipson was the passenger. The deputy stated that upon searching the vehicle he found a gun underneath Gipson's seat, and he identified State's exhibit 21-B as the same weapon.

Viewing this evidence in the light most favorable to the verdict, we determine that rational jurors could conclude that this evidence sufficiently tended to connect Gipson to the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). We overrule Gipson's first point of error.

### *Violation of "the Rule"*

In his second point of error, Gipson contends that the trial court erred by allowing Detective Kleinert to testify for the State even though Kleinert had violated Texas Rule of Evidence 614's witness-sequestration requirement. At trial, Gipson's attorney invoked "the Rule," *see* Tex. R. Evid. 614, before the State called any witnesses. Accordingly, the trial court instructed the witnesses to remain outside the courtroom except while testifying. When the State later called Detective Kleinert, Gipson's attorney objected that Kleinert was already in the courtroom. The court overruled the objection.

The State does not dispute the fact that Detective Kleinert was in the courtroom in violation of the trial court's witness-sequestration instructions. Instead, the State argues that the trial court properly allowed Kleinert to testify because Kleinert's testimony was independent of, and did not corroborate, the testimony of the prior witnesses.

When invoked by either party or the trial court, the Rule mandates the exclusion of witnesses from the courtroom during trial so they cannot hear the testimony of other witnesses. Tex. R. Evid. 614. The Rule is designed "to prevent the testimony of one witness from influencing

6

the testimony of another, consciously or not." *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). When the Rule is invoked, "a witness should not listen to testimony in the case." *Harris v. State*, 122 S.W.3d 871, 882 (Tex. App.—Fort Worth 2003, pet. ref'd); *see* Tex. Code Crim. Proc. art. 36.05 (witnesses under the Rule are not allowed to hear any testimony in case).[3]

Although a trial court must exclude witnesses covered by the Rule, "the court's decision to allow testimony from a witness who has violated the rule is a discretionary matter." *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996) (per curiam). We review such a decision for abuse of discretion. *Id.* To determine whether the trial court abused its discretion, we perform a two-step analysis. *Guerra v. State*, 771 S.W.2d 453, 476 (Tex. Crim. App. 1988); *Minor v. State*, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref'd); *see also Mescher v. State*, No. 03-10-00517-CR, 2012 WL 2981104, at *2 (Tex. App.—Austin July 12, 2012, pet. ref'd) (mem. op., not designated for publication) (citing *Minor*). In the first step, we consider whether the witness who violated the Rule (1) was sworn in or listed as a witness in the case, or (2) was a person not intended to be a witness and was not connected with the State's or defendant's case-in-chief but who, because of events during trial, became a necessary witness. *Minor*, 91 S.W.3d at 829. If the witness lacked personal knowledge of the offense and was not likely to be called as a witness, then the trial court did not abuse its discretion in allowing the witness to testify. *Guerra*, 771 S.W.2d at 476; *Minor*, 91 S.W.3d at 829.

Under the first step of our analysis, we conclude that Detective Kleinert was connected to the State's case-in-chief and was likely to be called as a witness. Kleinert was the lead

---

[3] While Rule 614 provides four exceptions to witness sequestration, the State has not argued that any of these exceptions apply to Detective Kleinert. *See* Tex. R. Evid. 614(1)–(4).

detective on the case and testified that Shastry identified Gipson in a photo line-up. Kleinert's testimony indicates that he had personal knowledge of the offense and was, from the beginning of trial, connected to the case. He was not merely an incidental witness called to address an issue raised unexpectedly at trial.

In the second step of the analysis, "we look at whether or not the defendant was harmed or prejudiced by the witness's violation." *Bell*, 938 S.W.2d at 50; *see also Minor*, 91 S.W.3d at 829. Two criteria guide our analysis of harm: "(a) whether the witness actually conferred with or heard testimony of other witnesses, and (b) whether the witness's testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard." *Bell*, 938 S.W.2d at 50; *see also Guerra*, 771 S.W.2d at 476. If we determine that the trial court abused its discretion by allowing the testimony, we may reverse the trial court's judgment only if the error affected Gipson's substantial rights. *Russell*, 155 S.W.3d at 181 ("Because the appellant complains about the violation of an evidentiary rule, the error is non-constitutional and will be disregarded unless it affected the appellant's substantial rights.") (citing Tex. R. App. P. 44.2(b)); *Mescher*, 2012 WL 2981104, at *2. The error affects substantial rights when it "has a substantial and injurious effect or influence in determining the jury's verdict." *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005) (quoting *Russell*, 155 S.W.3d at 183).

To determine whether Kleinert's presence in the courtroom harmed or prejudiced Gipson, we consider whether Kleinert's testimony corroborated the testimony of a witness he heard testify. Although the record does not indicate precisely when Kleinert entered the courtroom, it is undisputed that Kleinert heard the testimony of two other witnesses for the State, Brian Turner and

Jason Flater.[4] Turner was the sheriff's deputy who testified concerning the traffic stop, and Flater was a firearms examiner who testified concerning the operability of Griffin's gun. Based on the record before us, we cannot conclude that Kleinert's testimony served to corroborate the testimony of any other witness. The topic of Kleinert's testimony—the photo line-up—was unrelated to the testimony provided by Turner and Flater. Consequently, we conclude that Kleinert's violation of the Rule did not harm or prejudice Gipson, and the trial court did not abuse its discretion in allowing Kleinert to testify.

Furthermore, even if the trial court did abuse its discretion, we must disregard the error because it did not affect Gipson's substantial rights. *Russell*, 155 S.W.3d at 181. Kleinert's testimony served chiefly to bolster Shastry's in-court identification of Gipson, and the State presented substantial evidence apart from Kleinert's photo line-up. *See Easley v. State*, 424 S.W.3d 535, 542 (Tex. Crim. App. 2014) (concluding that under Rule 44.2(b) trial court's error was not reversible in part because "the evidence supporting the jury's verdict was substantial"). Having considered the record as a whole, we cannot conclude that the trial court's alleged error had "a substantial and injurious effect or influence in determining the jury's verdict." *Rich*, 160 S.W.3d at 577. We overrule Gipson's second point of error.

### Improper jury argument

In his third point of error, Gipson contends that the trial court erred when it overruled his objection to comments the prosecutor made during the State's rebuttal argument at the guilt-

---

[4] The trial court indicated that it believed Kleinert had not been in the courtroom long and had "at best" heard the testimony of Turner and Flater.

innocence phase of the trial. Gipson maintains that the prosecutor's statements improperly shifted the burden of production from the prosecution to the defense and indirectly attacked his constitutionally protected decision not to testify. The State counters that prosecutors may properly comment on a defendant's failure to produce evidence so long as the comment does not implicate the defendant's decision not to testify by referencing evidence that only the defendant could have produced.[5]

The parties' dispute concerns the following portion of the prosecutor's argument:

> We talked about prints. And Ms. Needles [defense counsel] asked some questions of the print experts. And she just implied to you that perhaps it's possible that those prints were left some other time, 12 to 14 hours before, some other day, she asked the print people on the stand.
>
> They have subpoena power. If the defendant was at that store 12 to 14 hours before, wouldn't there be a witness here telling you that? If the defendant was at that store some other time during that week, day, month, year, don't you think there would be a witness here telling you that?

At this point, Gipson's attorney interjected, "Objection, Your Honor; improper argument. The burden is not on the Defense to produce any evidence; it's on the State." The court overruled the objection.

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010)). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules

---

[5] The State also contends that Gipson has not preserved his argument that the prosecutor's comments alluded to his failure to testify because at trial he objected only that the prosecutor's comments shifted the burden of production. We assume, without deciding, that Gipson properly preserved both arguments.

and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App.1990). "[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). "Consequently, error exists when facts not supported by the record are interjected in the argument, but such error is not reversible unless, in light of the record, the argument is extreme or manifestly improper." *Id.* Improper jury argument is reversible error only when it (1) violates a statute, (2) injects new and harmful facts into the case, or (3) is manifestly improper, harmful, and prejudicial to the rights of the accused. *Jimenez v. State*, 240 S.W.3d 384, 410 (Tex. App.—Austin 2007, pet. ref'd).

A comment on a defendant's failure to testify violates both the state and federal constitutions as well as Texas statutory law. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011); *Brewer v. State*, No. 03-10-00076-CR, 2014 WL 709549, at *4 (Tex. App.—Austin Feb. 21, 2014, no pet.) (mem. op., not designated for publication); *see* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. art. 38.08. However, the implication that the State's comment referred to the defendant's failure to testify must be a clear and necessary one. *Randolph*, 353 S.W.3d at 891. If the language might reasonably be construed as merely an implied or indirect allusion, there is no violation. *Id.*; *see also Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex. Crim. App. 1995) ("A mere indirect or implied allusion to the accused's failure to testify does not violate appellant's rights," and "if the language can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony, the comment is not improper."). The test is whether the language used was manifestly intended or was of such a character that the jury would

11

necessarily and naturally take it as a comment on the defendant's failure to testify. *Randolph*, 353 S.W.3d at 891; *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (quoting *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001)). In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character. *Randolph*, 353 S.W.3d at 891. Courts are not to find that the prosecutor manifestly intended to comment on the defendant's failure to testify if some other explanation for the remark is equally plausible. *Id.* In assessing whether the defendant's rights have been violated, courts must view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of its being a permissible argument. *Id.*

Based on the record before us, we conclude that the jury could have reasonably construed the prosecutor's comments to refer to Gipson's failure to produce testimony other than his own and that the prosecutor's comments did not improperly shift the burden of production to the defendant. Gipson's attorney attempted to explain the identification of Gipson's print at the crime scene by arguing to the jury that "prints are there forever, forever as long as they need to be until there's something cleaned or it's rained on or something of that nature." Moreover, when Gipson's attorney cross-examined the State's witness who lifted the prints, she asked the witness whether the prints could have been at the store for an indefinite amount of time, and the witness answered "Yes." The clear implication of this cross-examination and jury argument is that Gipson may not have been present during the robbery because he could have left a latent print during an earlier visit to the store. When the prosecutor mentioned the prints in her rebuttal argument, therefore, she was responding to Gipson's theory regarding the timing of the prints, not interjecting new facts. *See*

12

*Brown*, 270 S.W.3d at 570. In addition, the prosecutor's mention of the defense's subpoena power also highlights the fact that she was referring to witnesses other than Gipson himself. *See Harris*, 122 S.W.3d at 884 ("as evidenced by reference to the defense's 'subpoena power,' the State's comment specifically pointed out the lack of testimony from other witnesses"). Because the prosecutor's comments could reasonably be construed as referring to Gipson's failure to produce testimony other than his own and did not shift the burden of production to Gipson, the comments were not improper. *See Patrick*, 906 S.W.2d at 491. We overrule Gipson's third point of error.

### Reformation of the judgment

Finally, we note that the trial court's judgment erroneously lists the statute for the offense as "29.03 Health and Safety Code." The correct citation is to Texas Penal Code section 29.03. Thus, even though neither party raised the issue on appeal, we reform the judgment by changing the phrase "29.03 Health and Safety Code" to "29.03 Penal Code." *See Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) ("The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court. The appellate court may act sua sponte and may have the duty to do so.") (citations omitted); *see also Morris v. Blangger*, 423 S.W.2d 133, 134 (Tex. Civ. App.—Austin 1968, writ ref'd n.r.e.) (reforming summary judgment from "without prejudice" to "with prejudice" because court has duty to terminate litigation where nothing in record indicates that appellant could successfully plead cause of action). The judgment also contains a second error: it fails to note that Gipson pleaded true to an enhancement allegation.

13

We also reform the judgment to reflect that Gipson pleaded true to the enhancement paragraph alleged in the indictment.

## CONCLUSION

Having overruled each of Gipson's points of error, we affirm the judgment of conviction as modified.

_____

Scott K. Field, Justice

Before Justices Pemberton, Goodwin, and Field

Modified, and as Modified, Affirmed

Filed: February 12, 2015

Do Not Publish

14